# REPORTS OF CASES

### DECIDED IN

# THE SUPREME COURT

#### OF THE

# DISTRICT OF COLUMBIA.

---

SAMUEL CHASE BARNEY, JR., EDWARD D. BAR-
NEY AND OTHERS, BY THEIR NEXT FRIEND, JOHN
W. DEKRAFT,

*vs.*

### SAMUEL CHASE BARNEY.

---

1. Where a bill is filed having for its subject-matter the estates and per-
sons of infants, and service of the subpœna is had upon the defendant,
the parties are at once in Court and the children in its custody
and care, and it is a grave offense to remove them, pending the
proceedings, from the Court's jurisdiction for the purpose of ren-
dering the exercise of its authority and protection impotent.
2. An order upon the defendant to show cause why he should not be
punished for contempt for so removing the children is an inter-
locutory order and may be passed by a justice at Chambers as
well as in Term.
3. Where in such a case the defendant remains in contempt by refus-
ing to comply with the order of the Court requiring him to bring the
wards within the jurisdiction of the Court, his answer to the bill
will be stricken from the files and the complainant will be allowed
to proceed as in case of default.

In Equity. No. 1,846. Decided May 14, 1863.

MOTION to vacate an order passed in Chambers.

THE BILL in this case was filed for the purpose of having
the Court adjudge the defendant unfit and incompetent to

execute and perform the office of guardian to his minor children, and praying "that he be enjoined from exercising any authority or control over them or either of them, their persons or property, and that he be specially directed and enjoined not, either by himself, his agents or other persons, to interfere with the custody, maintenance or education of the said minor children, or either of them, during their respective minorities." After the bill was filed, and service of the subpœna had, the defendant removed the children from the jurisdiction of the Court; whereupon an order was obtained in Chambers requiring him to show cause why he should not be punished for contempt for having so removed them. Afterwards this motion was made by the defendant to vacate said order, and the same was heard in the first instance in General Term. The facts going to the merits of the case appear in the opinion of the Court.

MESSRS. RICHARD S. COXE and T. M. BLOUNT, for complainant.

MR. WALTER D. DAVIDGE, for defendants.

MR. CHIEF JUSTICE CARTTER delivered the opinion of the Court:

The motion to set aside or vacate the order made by the Chief Justice of this Court on the 22d of March last must be denied:

1. Because we are disposed to regard the order as a mere interlocutory order, such as a judge possessing plenary equity jurisdiction may make at Chambers as well as in Term.

It is true that the petitioner asks for some things to be done which it is the proper office of an injunction to enforce; for example, such as enjoining the defendant from taking any proceedings in the Orphans' Court of this District, or in any other judicatory in respect to these infants, and the further command that the defendant return these infants to this District. But we are disposed to look at the

substance of this petition in connection with the order passed upon it, and regard it as it properly is, an order to show cause at this term of the Court why the defendant should not be punished for a contempt of the authority of this Court in removing from its jurisdiction the infant plaintiffs in this suit.

This is the substance of the petition upon which the Chief Justice endorsed "allowed." Now, though this petition might contain a prayer or request that other things should be done, which, upon consideration, this Court would refuse to order to be done, that would, in a court of equity, be no reason for refusing to do what was properly asked for and just and proper to be done.

2. Upon the merits of this motion the material and undisputed facts are simply these:

On the 24th day of February last the infant children of the defendant by their next friend filed their bill in the late Circuit Court of this District against their father, charging that his habits and character were such as disqualified him from acting as the guardian of their estates and persons.

That after such bill was filed and a subpœna issued and served upon the defendant, he took these children from the custody of the person having it at the time the suit was commenced, and removed out of the jurisdiction of this Court with the intent and purpose of rendering the exercise of its authority and protection impotent and of no effect; that this act was done, if not upon the suggestion, at least under the advice and approval of his counsel.

We are of the opinion that the moment this suit was commenced and the subpœna was served upon the defendant, these parties were in Court, and these infant children were in its custody and under its care and protection. In other words, they became, in the language of the law, "wards of this Court," and to remove them beyond its jurisdiction and control, and especially if with intent to evade its authority, is a grave offense.

The order of the Court is:

1. That the motion to dissolve the order granted on the 22d of March be denied.

2. That the defendant return, or caused to be returned, said infant children to the custody of the person or persons in this District whence they were removed within ten days from the date of this order.

3. That in default of so doing the answer of the defendant filed in this cause be stricken from the files of this Court, and the plaintiff be allowed to proceed in the cause in the same manner as though default had been made in answering the bill of complaint in this cause.

4. That either of the parties be at liberty to apply to this Court for such directions as to the custody and control of said infant children during the pendency of this suit as to them seem meet and proper.

5. That the defendant pay the costs of this motion to be taxed by the clerk of this Court.

---

NOTE.—It may not be without interest to give here the opinion of Judge Purcell delivered in the Orphans' Court of the District, March 21st, 1863, upon a hearing of another branch of this, at that time, much litigated case, inasmuch as it presents, among other interesting questions, the views of that learned judge upon the very point afterwards raised and decided by the General Term in the foregoing opinion. It may be added that the opinion of Judge Purcell has never before been published.

Samuel Chase Barney ⎫    *In the Orphans' Court of the*
       *vs.*       ⎬    *District of Columbia, March 21st,*
John W. DeKraft, *et al.* ⎭   *1863.*

PURCELL, J. In the above case this Court on the 25th day of January, 1862, pronounced a final decree appointing Dr. Harvey Lindsley (at discretion) guardian to the above

minor children; the Court being of the opinion that Samuel Chase Barney had lost his marital rights as husband and natural guardian by the decree of divorce obtained in Jasper County, in the State of Iowa. By that decree he was forever separated from his wife, and the custody of the said minor children was taken from him and given to the mother. It appeared on the face of the decree that the Court was a tribunal of competent jurisdiction, both over the parties and the subject matter, and that the said decree was duly and properly authenticated according to the act of Congress in such cases made and provided. And this Court held that the divorce was sufficient to exclude Samuel Chase Barney from the guardianship of the property of the said children, without reference to *all* the other facts against him in the case. Also that inasmuch as the said decree of divorce declared that Samuel Chase Barney had received timely notice of the pending of the suit by the proper publication required by law and notice sent to his residence, it could not be enquired into collaterally by this Court, and authorities were cited to that effect, and that such a decree was not *ex parte*. This Court at the same time stated another fact which was entitled to much consideration. To wit: that the will of Edward DeKraft, by whom the whole estate in question was devised, the father of Mary E. DeKraft, who intermarried with the said Samuel Chase Barney and who was the mother of the said minor children *expressly* declared that*"no husband of his daughter should ever at any time control the estate so devised."* From this decision the said Samuel Chase Barney appealed to the Circuit Court of the District, and by that Court the decision of this Court was reversed. An appeal was then taken by J. W. DeKraft, next friend of the children, to the Supreme Court of the United States, which was dismissed by that tribunal for want of jurisdiction. (See DeKraft *vs.* Barney, 2 Bl., 704). The Circuit Court (opinion delivered by Judge Merrick*) in

---

*See this opinion in the appendix.

reversing the decision of this Court, made, and elaborately
discussed, three points. 1st. That the decree of divorce
rendered in Iowa, could not be received in evidence for any
purpose in the present controversy. 2nd. That the will of
Edward DeKraft did not apply to the personal custody of
the minor children, but only to the property and that al-
though the language of said will was clear and explicit
that "no husband" of his daughter should ever at any time
control the estate, yet as natural guardian, Samuel Chase
Barney, the father, was entitled to preference in the control
of said property, provided he gave sufficient bond and
sureties as natural guardian. 3rd. That the statute of
Maryland of 1798, in reference to the removal of guardians
by the Orphans' Court, did not apply to Samuel Chase Bar-
ney as natural guardian. In reference to the points thus
considered by the Circuit Court, and upon the soundness of
their decision, it would perhaps be unbecoming for this
Court to comment, although it may not be amiss to quote
the express language of the sections of the statute of Mary-
land of 1798, which was held by the Circuit Court (in their
3rd and last point) not to apply to the present case. In
sub-chapter 12, chapter 101 of that statute, different classes
of guardians are mentioned. "Natural guardians" and
"testamentary guardians." Then sub-chapter 15 provides
that " the Court (Orphans') may, upon application of an in-
fant or any person in his behalf, suggesting improper con-
duct *in any guardian whatever*, either in relation to the care
and management of the property and person of any infant,
inquire into the same, and at their discretion, remove such
guardian and make choice of another, who shall give se-
curity and conduct himself in the manner hereinbefore
prescribed and shall receive the property and custody of
the ward." Could language be more comprehensive or ex-
plicit? This statute is in force in this District, and it ex-
pressly provides that the Orphans' Court may remove "any
guardian" for improper conduct, either in regard to the

*person* or *property* of the ward. Clearly embracing all guardians, and this has been the opinion of the ablest jurists both of this District and the State of Maryland. On the second day of March, 1863, the Circuit Court issued their mandate from their clerk's office, directing this Court to cite Samuel Chase Barney to give bond with sufficient securities to be approved by this Court, &c., &c.

Said mandate was delivered to the clerk of this Court on the 4th day of March, 1863, the day after the said Circuit Court was abolished by Congress. The Circuit Court was the proper appellate tribunal, and this Court would feel bound to respect its mandate, but it appears from the certificate, under seal of the clerk of that Court, who was also clerk of the Court of Chancery, that on the 24th day of February, 1863, a bill in equity had been filed in behalf of said minor children, who were then in the custody of Dr. Harvey Lindsley, their duly appointed guardian by this Court, the property being also in his possession; said bill alleging unfitness of said Barney because of gross immorality and incompetency, rendering him unfit to have the custody of the said minor children, or to have the management of their property; consequently, the said minor children became "wards in chancery" from the filing the said bill and the issuing the process thereon, and service on said Samuel Chase Barney on 26th of February, which proceedings operated as a *supersedeas* to the action of all other courts and persons. (It was stated to this Court, and not denied by the opposite counsel, that the Circuit Court had agreed to hear an argument, and examine authorities, as to the propriety of having ordered the mandate, but did not, owing to some misunderstanding between the Court and counsel, R. S. Coxe, Esq.) The above doctrine is very clearly stated by Judge Story, in his very able work upon Equity Jurisprudence, vol. 2, sections 1352 and 1353. He says, "Wherever a suit is instituted in the Court of Chancery relating to the person or property of an infant, although he is

under any general guardian appointed by the Court, he is treated as a ward of the Court and as being under its especial cognizance and protection." In all cases where an infant is a ward of chancery no act can be done affecting the person or property or state of the minor, unless under the express or implied direction of the Court itself. Every act done without such direction is treated as a violation of the authority of the Court, and the offending party will be arrested upon proper process for the contempt, and compelled to submit to such orders and such punishments by imprisonment as are applied to other cases of contempt. See also Duke of Beaufort vs. Wellsley, 2d Russell, 20 and 21.

In this case the rights of the father, as natural guardian, were involved, and he was by the Court adjudged unfit to have the custody of his children. Goodall vs. Harrison, 2d P. Williams, 562. Butler vs. Freemen, Ambler's Reports, 302. 2d Bligh's Reports, 137. Thus it will be seen that, by the foregoing high authorities, should this Court regard the mandate issued by the late Circuit Court, or "do any other act affecting the person, property or state of the minors" from the time they became "wards of chancery," it would be guilty of contempt of the Court of Chancery. And may not the late Circuit Court have rendered themselves liable, the mandate having been issued subsequent to the filing of the said bill in behalf of the minor children? Filing a bill in Chancery, on behalf of infants, makes them "wards of court" says Maddox in his Chancery Practice, vol. 1, page 432. See also the authorities referred to in the margin by the learned author.

Indeed, the Circuit Court on page 17 of their opinion already referred to, say that the Court of Chancery affords ample relief in the case of minors when properly invoked.

But if any doubts existed, as to the principle in chancery, as above stated from the foregoing authorities and facts, they were removed on the awarding of the injunction on

yesterday, the 20th inst. by the Hon. D. K. Cartter, Chief Judge of the Supreme Court of this District, which was filed by John W. DeKraft, as next friend of said minor children, which arrested the said mandate ordered by the late Circuit Court, and which has been brought officially to the view of this Court.

It is, therefore, ordered and decreed from the foregoing authorities and facts that the direction contained in the mandate above referred to, of the late Circuit Court, to cite Samuel Chase Barney to give bond and security as natural guardian to said minor children, within a reasonable time, is overruled.